IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| ROSHANI SHETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:24-cv-05061 |
| | ) | |
| THE NATIONAL ASSOCIATION OF REALTORS, | ) ) | Judge Georgia N. Alexakis Magistrate Judge M. David Weisman |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NATIONAL ASSOCIATION OF REALTORS®'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's Opposition to Defendant National Association of Realtors®'s ("Defendant" or "NAR") Motion to Dismiss (the "Opposition" or "Opp." when cited) fails to refute the substantive arguments Defendant raised in its Motion to Dismiss and does not save her claims. And the efforts Plaintiff does make in an attempt to refute NAR's arguments (attaching documents that conclusively refute her own allegations, misapplying statutory provisions, and failing to provide support for other propositions), demonstrate that no amount of repleading can rehabilitate the Amended Complaint.

For the reasons herein, and for those more fully stated in NAR's opening brief, the Amended Complaint should be dismissed, with prejudice.

**ARGUMENT**

**I. Plaintiff's IHRA claim (Count II) Must be Dismissed Because it is Untimely.**

Plaintiff's window to bring her IHRA claim passed in November 2022. The Illinois Department of Human Rights ("IHDR") issued Plaintiff a Closing Letter on September 2, 2022, instructing that Plaintiff must commence a civil action between August 30, 2022 and November 27, 2022, and any complaint outside that window would be dismissed. (Dkt. 18-2 at 2). Despite

1

this, Plaintiff argues erroneously that her IHRA claim is timely because, under 775 ILCS 5/7A-102 (A-1) (5), the "time limit set out in subsection (G) is tolled from the date on which the charge is filed with the EEOC to the date on which the EEOC issues its determination." (Opp. p. 11). Plaintiff's citation is inapposite, however, as the cited tolling section applies only when "the EEOC is the governmental agency designated to investigate the charge *first*." 775 ILCS 5/7A-102 (A-1) (1).[1] Moreover, the tolling section only applies to the time in which the IDHR may conclude its own investigation. (*Id.*)

Here, though, Plaintiff dual-filed her Charge with the IDHR and the Equal Employment Opportunity Commission ("EEOC"), the IDHR undertook the investigation first. Thereafter, the IDHR issued Plaintiff the Closing Letter which notified Plaintiff that "if you do not file a complaint . . . your case will be automatically forwarded to the EEOC for investigation." (Am. Compl. at ¶ 2 (conceding that IDHR undertook investigation first); Opp. Ex. B. at 2). But even if statutory tolling applied here, it would have applied to the IDHR's 365-day period to investigate the charge and issue its report pursuant, not to the period Plaintiff had to bring their claim in state court. *See* 775 ILCS 5/7A-102 (A-1) (5), (G).

Consequently, Plaintiff's claim of retaliation under the IHRA is untimely and no amount of repleading can save Plaintiff's claim.

---

[1] Where, unlike here, the EEOC is the government agency designated to investigate the charge first:
> the [IDHR] shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the [IDHR] of the EEOC's determination. In such cases, after receiving notice from the EEOC that a charge was filed, **the [IDHR] shall notify the parties that** (i) a charge has been received by the EEOC and has been sent to the [IDHR] for dual filing purposes; (ii) the EEOC is the governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant; and (v) **that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination.**

(*Id.* (emphasis added)).

## II. The Amended Complaint Fails to State a Claim of Retaliation (Counts I and II).

Plaintiff's Opposition unsuccessfully refutes NAR's argument that Plaintiff failed to state a claim of retaliation under the IHRA or Title VII because she did not plead an adverse employment action or the requisite causation.

### a. Plaintiff Fails to Allege any Adverse Employment Action.

Counts I and II of Plaintiff's Amended Complaint allege NAR "took adverse employment actions in retaliation to Plaintiff's protected activities." (Am. Compl. at ¶¶ 49-50, 60-61). At best, the Amended Complaint proffers two vague allegations regarding purported adverse employment actions: (i) that NAR failed to provide a neutral employment reference as agreed upon in the Settlement Agreement, and (ii) that NAR's "agents" began sending her harassing text messages at the commencement of the IDHR's investigation. (Dkt. 18 at p. 5).

As to the first allegation, Plaintiff fails to refute that NAR had no obligation to provide a neutral employment reference pursuant to the Settlement Agreement. Plaintiff, instead, attached Exhibit A to her Opposition ("Shield Email") in an attempt to bolster her argument that her allegation is facially plausible. (Opp. Ex. A). The Shield Email is an email from a third-party employment verification firm, Shield Screening, stating that "after several attempts, we have not been able to verify the employment details for National Association of Realtors NAR." (*Id.*; *see also* Am. Compl. at ¶ 36). Notably, the Shield Email does not identify who Shield Screening attempted to contact, what employment details it was attempting to verify, or if it ever actually made contact with NAR. Consequently, the Shield Email does nothing to demonstrate that NAR acted or omitted to act at all – thus there is no action by NAR to challenge as adverse.

Moreover, Plaintiff ties the purportedly retaliatory act to a contractual obligation to provide the neutral reference. That also dooms Plaintiff's claim. As argued in NAR's Motion to Dismiss, the Amended Complaint does not sufficiently allege that Plaintiff met the conditions precedent to

3

NAR's contractual obligation to provide a neutral reference, and the Shield Email offers nothing to redeem those pleading deficiencies. Given the contractual agreement between the Parties, NAR's alleged failure to provide a neutral reference cannot constitute an adverse employment action where Plaintiff has not alleged the contractual conditions to trigger that obligation were met.

Finally, NAR's alleged failure to provide a neutral reference, based on the particular facts alleged here, is not an adverse action because it would not have "'dissuaded a reasonable worker from' engaging in protected activity." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The Shield Email states:

> After several attempts, we have not been able to verify the employment details for NATIONAL ASSOCIATION OF REALTORS NAR. ***In order to satisfy Millennium Trust Company requirements, can you please send me work documentation that verifies when you started and ended your employment to me via email or fax***

(Opp. Ex. A. (emphasis added)). Thus, regardless of whether NAR provided a neutral reference, the Shield Email proves that Plaintiff had an alternate avenue to verify her employment – she could have sent her work documentation verifying her employment herself, making any purported harm "trivial" and not actionable. *See Burlington* 548 U.S. at 67 (cautioning that "it is important to separate significant from trivial harms," and holding Title VII's antiretaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

As to the second allegation, Plaintiff's Opposition fails to refute NAR's argument that the alleged harassing text messages she purportedly received in February of 2021 are not actionable. While *Burlington* held that the Title VII "antiretaliation provision is not limited to actions affecting employment terms and conditions[,]" *Burlington* did not overrule *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996) – a case NAR cited in its opening brief – which courts in this Circuit continue to rely on for the proposition that Title VII retaliation claims are only actionable when

4

the retaliatory conduct impinges on their future employment prospects or otherwise has a nexus to employment. *See, e.g.*, *Sicher v. Merrill Lynch*, 2011 WL 892746, at *3 (N.D. Ill. Mar. 9, 2011); *Sweet v. Int'l Servs., Inc.*, 2018 WL 5279313, at *7 (N.D. Ill. Oct. 24, 2018); *Del Signore v. Nokia of Am. Corp.*, 672 F. Supp. 3d 560, 571 (N.D. Ill. 2023); *Shah v. AbilityLab*, 2023 WL 6388228, at *6 (N.D. Ill. Sept. 29, 2023).

Plaintiff's receipt of anonymous text messages has no nexus to Plaintiff's employment with NAR when she herself cannot attribute the messages to NAR and they were received over one year after her employment with NAR ended. Without providing any factual allegations to support her claim that these messages are in any way affiliated with NAR, any conclusion that NAR sent the messages is not plausible on its face and there is no nexus between the messages and Plaintiff's employment with NAR.

### b. Plaintiff Fails to Allege the Requisite Causation.

The Opposition also ineffectively counters NAR's argument that Plaintiff failed to allege a causal link between her protected activity and the purported adverse employment action. *See Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). For the causal link prong to be satisfied, the decisionmaker of the adverse action must have knowledge that Plaintiff engaged in a statutorily protected activity and Plaintiff must show that her protected activity was the but-for cause of the adverse action. *See Bernier v. Morningstar, Inc.*, 495 F.3d 369, 376 (7th Cir. 2007) ("an employer cannot retaliate when it is unaware of any complaints"); *Tarpley v. City Colleges of Chicago*, 87 F. Supp. 3d 908, 914 (N.D. Ill. 2015); *Oka v. Air Line Pilots Ass'n, Int'l*, 2024 WL 3888763, at *7 (N.D. Ill. Aug. 20, 2024) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Focusing only on attempting to rebut NAR's lack of temporal proximity argument, Plaintiff fails to allege any decisionmaker of the purported adverse employment actions had knowledge of

5

her protected activity. Setting aside the fact that Plaintiff failed to provide *any* factual allegations as to who purportedly sent her the harassing text messages, Plaintiff's Opposition claims for the first time that the text messages were allegedly sent by NAR's "agents" <u>after the IDHR contacted NAR</u> to participate in its investigation. (Opp. p. 7). Critically, however, the Amended Complaint includes *no allegation* that NAR was contacted by the IDHR or that NAR was aware of the investigation at the time Plaintiff allegedly received the harassing text messages. In fact, the Amended Complaint states the opposite – that the IDHR contacted *Plaintiff* to request documents, rather than contacted NAR. (Am. Compl. at ¶ 38).

Plaintiff likewise fails to claim that whoever allegedly refused to provide a neutral employment reference had knowledge of her protected activity, and the Amended Complaint is deficient in that Plaintiff fails to allege which decisionmaker took such action against Plaintiff. While Plaintiff alleges the contact information provided "went directly to Gland" (Am. Compl. ¶ 33), the Settlement Agreement is clear that reference requests are to be directed to NAR's "Talent Development Department." (Dkt. 18.1). Simply put, Plaintiff's Amended Complaint fails to identify who at NAR allegedly received a neutral reference request from a prospective employer (or that anyone received such request), let alone that this person had knowledge of Plaintiff's purported protected activity. This failure to plead the requisite causation is fatal to Plaintiff's IHRA and Title VII retaliation claims, and, therefore, Counts I and II must be dismissed.

**III.    Plaintiff's Amended Complaint Fails to State a Claim of Discrimination under Section 1981 (Count III).**

      **a.    Plaintiff Fails to Plead She Suffered an Adverse Employment Action.**

For the reasons argued above, and more fully in NAR's opening brief, Plaintiff's Amended Complaint fails to allege Plaintiff suffered any adverse employment action as required to state her claim of discrimination under Section 1981. *See Shirley v. Staffing Network Holdings, LLC*, 2016

WL 6599951, at *3 (N.D. Ill. Nov. 8, 2016). Plaintiff's Opposition offers no rebuttal whatsoever to NAR's argument. For this reason, alone, Count III must be dismissed.

### b. The Amended Complaint Fails to Plead that Race was the "But-For" Cause of the Purported Adverse Employment Actions.

Under *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,* 589 U.S. 327 (2020), race must be asserted as the determinative cause to sustain a Section 1981 claim. *Arora v. NAV Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022) ("[T]he fact that Arora can bring suit under various civil rights statutes does not change *Comcast*'s holding that race must be asserted as the determinative cause to sustain a Section 1981 claim."). Plaintiff's Opposition argues "Plaintiff here has sufficiently pled that Defendant's conduct was because of her race." (Opp. p. 12). The Amended Complaint asserts, however, that "Defendant discriminated against Plaintiff **because of her sex, race, and perceived national origin**." (Am. Compl. at ¶ 69 (emphasis added)). Plaintiff thus alleges that race was ***one factor*** – of many – causing NAR's purported adverse employment action, not that "but for" her race NAR would not have taken the asserted action. This allegation does not meet Plaintiff's pleading obligation pursuant to *Comcast* because Plaintiff also alleges her sex, a characteristic not protected by Section 1981, was a reason NAR discriminated against her. *See* 42 U.S.C. § 1981. Because Plaintiff alleges race was just one of several factors causing NAR's purported adverse employment action, Plaintiff's claim cannot survive a motion to dismiss, and, for this independent reason, Count III must be dismissed. *Piccioli v. Plumber Welfare Fund Local 130, U.A.*, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020); *see also Arora*, 2022 WL 7426211, at *3 (citing *Postell v. Fallsburg Libr.*, 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022) ("[P]laintiff's 'bundled' allegations of 'race, gender, or age' precluded but-for finding under Section 1981)).

### c. Plaintiff's Hostile Work Environment Claim Is Not Actionable.

7

Plaintiff's Opposition argues that "while the Plaintiff is no longer under the employment of the Defendant, her continued dependance on the Defendant to provide employment references extends the work environment past the point of termination." (Opp. at 14). Notably, Plaintiff cites to no authority in support of her proposition that she can bring a hostile work environment claim based entirely on post-termination actions of NAR. Indeed, this unsupported allegation is nothing more than an attempt to side-step the parties' Settlement Agreement, by which Plaintiff released NAR from any such claim. By operation of the Settlement Agreement, Plaintiff:

> knowingly and voluntarily released and forever discharged NAR . . . from any and all claims arising out of [Plaintiff's] employment with [NAR], known and unknown, asserted or unasserted, which [Plaintiff] has or may have against [NAR] as of [December 16, 2019] including, but not limited to, any alleged violation of: . . . Sections 1981 through 1988 of Title 42 of the United States Code.

(Dkt. 18.1). While Plaintiff argues that the hostile work environment has extended "past the point of her termination" as a result of her "continued dependence" on NAR to provide employment references, she cites no case for that proposition. (Opp. p. 14) And she cannot, as courts in this Circuit have held otherwise. *See Saud v. DePaul Univ.*, No. 19-CV-3945, 2020 WL 5702165, at *1 (N.D. Ill. Sept. 24, 2020) (hostile work environment claim cannot be maintained once an employee is terminated, as such individual is no longer an employee, and, thus, they are no longer in a "working environment" or subject to any "conditions of employment").

IV. **The Amended Complaint Fails to State a Claim of Breach of Contract (Count IV).**

Plaintiff's Opposition fails to refute Defendant's argument that Plaintiff's vague allegations are insufficient to state a claim of breach of contract. NAR's contractual obligation to provide a neutral employment reference under the Settlement Agreement is only triggered when Plaintiff's prospective employer directs any request to NAR's Talent Development Department ("TDD"). While Plaintiff's Amended Complaint alleges she directed employment references in accordance with the Settlement Agreement, it is silent as to (i) whether any prospective employer

8

contacted the TDD, (ii) whether the TDD actually received such a request (as opposed to missing a call), or (iii) if so, whether the TDD refused to provide a neutral reference request. Even more, the only allegations in the Amended Complaint addressing an attempt to obtain an employee reference states that Shield Screening made several attempts to "contact Defendant" – not that the verification specialist attempted to contact NAR's TDD (who thereafter refused to provide a neutral reference). (Am. Compl. at ¶ 36).

Plaintiff's Opposition ignored these arguments, simply offering a three-sentence response merely stating that "Plaintiff clearly pled all the elements required to state a breach of contract. Plaintiff as well pled factual allegations substantiating the Defendant's breaching conduct." (Opp. p. 15). As NAR argued in its Motion to Dismiss, these cursory allegations are insufficient to state a claim for breach of contract, and, thus, Count IV must be dismissed.

In addition to this pleading deficiency, the Shield Email is fatal to her claim. (Opp. Ex. A). To state a claim for breach of contract, Plaintiff must allege the damages element. *See Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014). The Shield Email establishes conclusively that, even if NAR refused to provide a neutral reference where a request for the same was made pursuant to the Settlement Agreement – which it did not – such inaction did not result in damages to Plaintiff because Plaintiff had an alternative avenue to verify her employment status. As the Shield Email states explicitly, Plaintiff herself could have verified her employment details by providing Shield Screening with work documentation verifying the start and end of her employment with NAR. For this independent reason, Count IV must be dismissed.

V. **The Amended Complaint Fails to State a Claim for Tortious Interference with a Prospective Economic Advantage (Count V).**

Plaintiff's Opposition argues that she had a reasonable expectation of a future business relationship because she "completed the final stage of interviews and was awaiting a promised

9

follow up pending a reference check." (Opp. p. 15). As argued in NAR's Motion to Dismiss, Plaintiff's allegation that she completed a final round of interviews is insufficient to establish she had a reasonable expectation of a future business relationship rather than "a mere hope."

In addition to this pleading deficiency, the Shield Email is also fatal to this claim. (Dkt. 21-2). To state her claim, Plaintiff must allege, *inter alia*, purposeful interference by NAR that **prevents Plaintiff's legitimate expectations from ripening**. *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007). Yet, the Shield Email establishes that NAR's purported failure to provide a neutral reference *did not* prevent Plaintiff's expectations from ripening, as it states that Plaintiff herself could have verified her employment details by providing Shield Screening with work documentation verifying the start and end of her employment with NAR. Simply put, Plaintiff did not need NAR to verify her employment to get the job, as she could have done it herself. Thus, if Plaintiff had a reasonable expectation of a future business relationship, which she fails to allege, NAR's alleged inaction still would not have prevented that relationship from ripening.

Consequently, Plaintiff's Amended Complaint fails to state a claim of tortious interference with prospective economic advantage, and Count V must be dismissed.

## VI. Conclusion.

For the reasons set forth above, and as further stated in NAR's Motion to Dismiss, NAR respectfully requests that this Court dismiss the Amended Complaint, with prejudice.

Respectfully Submitted:

By: */s/Anneliese Wermuth*
    Anneliese Wermuth (#06270970)
    Steven Millman (*Admitted Pro Hac Vice*)
    COZEN O'CONNOR
    123 N. Wacker Drive, Ste. 1800
    Chicago, Illinois 60606
    (312) 474-7900/(312) 878-2023 (Fax)
    awermuth@cozen.com
    smillman@cozen.com

## CERTIFICATE OF SERVICE

I, Anneliese Wermuth, an attorney, hereby certify that on **November 5, 2024**, I caused a true and correct copy of **DEFENDANT NATIONAL ASSOCIATION OF REALTORS®'S REPLY IN SUPPORT OF MOTION TO DISMISS** to be electronically served via the Court's system, which will send notification of such filing to the following counsel of record:

Rupa Baskaran
Wilt Toikka Kraft, LLP
1629 K. Street NW, Suite 300
Washington, DC 20006

/s/ *Anneliese Wermuth*
Anneliese Wermuth