## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROSHANI SHETH, | |
| Plaintiff, | |
| v. | Case No. 24 CV 5061 |
| THE NATIONAL ASSOCIATION OF REALTORS, | Hon. Georgia N. Alexakis |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Roshani Sheth says she experienced pervasive sexual harassment and discrimination during and after her employment with the National Association of Realtors ("NAR"). In this suit, she brings claims against NAR for retaliation under Title VII and the Illinois Human Rights Act, discrimination under 42 U.S.C. § 1981, breach of contract, and tortious interference with prospective economic advantage. NAR has moved to dismiss all five of Sheth's claims. For the reasons that follow, the Court grants in part and denies in part NAR's motion to dismiss.

### LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, a court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

For the purposes of NAR's motion to dismiss, the Court accepts as true Sheth's allegations in her first amended complaint. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). NAR is a Chicago-based trade association for those who work in the real estate industry. [16] at 2 ¶ 3. With more than 1.3 million members, it is the largest trade association in the United States and controls access to nearly every American home listing. *Id.* at 3 ¶ 2.

Roshani Sheth is an Indian woman who lives in Chicago and worked as a project manager for NAR from May 2014 to October 2019. *Id.* at 1 ¶¶ 1–2. Sheth alleges she was subject to pervasive sexual harassment and discrimination while she worked there. *Id.* at 4 ¶ 6. Some of this harassment came at the hands of her direct supervisor, Ken Burlington, who was Vice President of NAR and the Chief Operating

2

Officer of a NAR wholly owned subsidiary. *Id.* at 3 ¶ 3. Sheth says Burlington "often objectified [NAR's] female employees and members, making at times lascivious, objectively offensive, and entirely unprofessional comments regarding their ages, sex lives, marital status, bodies, and using terms like 'bitch' in [Sheth's] presence." *Id.* at 4 ¶ 6.

Sheth alleges she experienced similar conduct while working with Matthew Embrescia, who was one of NAR's strategic partners. *Id.* ¶ 8. Sheth complained to Burlington about Embrescia's conduct but says Burlington took no action to stop it. *Id.* ¶ 10. In the fall of 2018, Burlington promised Sheth a promotion but later denied it because she was unable to "collaborate effectively" with Embrescia. *Id.* ¶ 14.

In April 2019, Sheth met with Julie Bleasdale, NAR's Director of Internal Communications and Talent Development, to discuss this conduct. *Id.* ¶ 15. After this meeting, Burlington treated Sheth with "marked hostility." *Id.* ¶ 16. Sheth again met with Bleasdale two months later, and Bleasdale escalated Sheth's concerns to Donna Gland and Linda Russell, two leaders in NAR's human resources department. *Id.* ¶ 18. Sheth claims Gland and Russell dismissed her concerns and suggested she speak with Burlington or resign. *Id.* ¶ 19.

Around the same time, Sheth filed an internal claim of discrimination with NAR. *Id.* ¶ 20. A month later, Gland and Russell informed Sheth that they were closing their investigation into her claim and that they were placing Sheth on a Performance Improvement Plan ("PIP") because she was not meeting NAR's core

values of "collaboration and respect" based on her interactions with Burlington and Embrescia. *Id.* ¶¶ 23, 25.

In September 2019, Sheth took a medical leave of absence under the Family and Medical Leave Act. *Id.* ¶ 28. After her leave ended, she returned to the office but was told her employment with NAR had been terminated based on her failure to meet the expectations of her PIP. *Id.* ¶ 29.

Sheth and NAR subsequently signed a settlement agreement in December 2019 ("Settlement Agreement"). *Id.* ¶ 31. In that agreement, Sheth agreed to release and discharge all then-existing claims against NAR arising out of her employment. [18-1] at 2.[1] NAR agreed that its Talent Development Department ("TDD") would respond to any reference requests by providing "only [Sheth's] dates of employment and position titles." *Id.*; *see also* [16] ¶ 32. Sheth says the contact information they provided for references was Gland's direct phone number. [16] ¶ 33.

Sheth dual-filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on July 28, 2020. *Id.* at 2 ¶ 1. On February 11, 2021, IDHR requested that Sheth provide certain documents related to her allegations. *Id.* ¶ 38. Although these documents were originally due on February 16, 2021, Sheth was granted an extension through February 19, 2021. *Id.* ¶ 39. Sheth alleges that between February 17, 2021, and

---

[1] The Court takes judicial reference of the agreement as it is incorporated into the complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference."); *see also* 5B Wright & Miller § 1357 (4th ed.) (2024).

February 19, 2021, NAR, "through its agents, sent [her] a series of harassing text messages." *Id.* ¶ 40. These messages called her a "rat," told her to "shut up," and included shorthand for "kill yourself." *Id.*

Following her termination from NAR, Sheth says she "spent an extended period of time" unable to find a new job even though she had submitted "more than 100 applications for positions for which she was qualified." *Id.* ¶ 35. In November 2022, a verification specialist from Shield Screening told her they were unable to verify her employment details even though they had made "several attempts" to contact NAR. *Id.* ¶ 36. Sheth has attached the email she received from the verification specialist to her response brief, which the Court incorporates into the complaint by reference. *See Tellabs*, 551 U.S. at 322.

On September 2, 2022—more than two years after Sheth filed her charge—she received a letter from IDHR informing her that the time limit for its investigation had expired and that the case would be forwarded to the EEOC. *Id.* at 2 ¶ 2. On March 20, 2024, the EEOC determined it would not proceed with the investigation and issued Sheth a notice of right to sue. *Id.* at 2 ¶ 3.

Sheth brought suit against NAR on June 18, 2024. [1]; [3]. After securing counsel, Sheth amended her complaint on September 10, 2024. [14]; [16]. Her amended complaint brings claims for (1) retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, (2) retaliation under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-101 *et seq.*, (3) discrimination under 42 U.S.C. § 1981, (4)

5

breach of contract, and (5) tortious interference with prospective economic advantage. [16]. Now before the Court is NAR's motion to dismiss the amended complaint. [17].

## DISCUSSION

NAR has moved to dismiss each of Sheth's five claims. [17]. The Court considers each in turn.

### A. Retaliation Under Title VII and the IHRA (Counts I & II)

Title VII's anti-retaliation provision "prohibits employer actions that 'discriminate against' an employee because she has 'opposed' practices that Title VII forbids or because she has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008) (quoting 42 U.S.C. § 2000e–3(a)). A plaintiff bringing a Title VII retaliation claim can proceed using either the direct or indirect method of proof. *Id.* Sheth proceeds under the direct method, so she must show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* (quoting *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007)). To satisfy the causation requirement for a Title VII retaliation claim, Sheth must show that her protected activity was the but-for cause of the employer's adverse action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Neither party disputes that Sheth engaged in statutorily protected activity when she complained of NAR's allegedly discriminatory conduct and filed a charge of discrimination with the EEOC and IDHR. [16] ¶¶ 49–50. Instead, the parties dispute

whether Sheth adequately pleads she was subject to an adverse action and whether the adverse action was causally connected to her protected conduct. Sheth alleges two potential adverse actions: (1) NAR's failure to respond to reference requests during Sheth's subsequent employment search, *id.* ¶¶ 33, 35–37, and (2) a "series of harassing text messages" NAR sent Sheth "through its agents," *id.* ¶¶ 40–41.[2]

### 1. Reference Requests

NAR argues its alleged failure to provide a neutral employment reference cannot constitute an adverse action because Sheth has not pled that she followed the proper process laid out in the Settlement Agreement. [18] at 5–6. The relevant portion of the agreement reads:

> subject to Employee directing all employment reference requests to Employer's Talent Development Department only (or any other successor department performing the same or similar tasks), Employer also agrees to respond to such requests by providing only Employee's dates of employment and position titles.

[18-1] at 2.

NAR argues that, despite the contractual prerequisite requiring the employee to direct all requests to the TDD, Sheth "fails to plead any prospective employer contacted NAR's TDD." [18] at 6. But Sheth pleads elsewhere in her amended complaint that she "directed all reference requests to Defendant's Talent Development Department, as per the terms of the Agreement." [16] ¶ 77. She also alleges that she "received communication indicating that requests to obtain references from Employer were met with a complete lack of response." *Id.* ¶ 78. From

---

[2] Both parties agree that any actions NAR took during Sheth's employment cannot constitute adverse actions based on the Settlement Agreement. [18] at 5; [21] at 6.

these allegations, it is reasonable to infer that the employers seeking a reference contacted NAR's TDD in accordance with the agreement. *See Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024) (at the pleading stage, courts "accept the well-pleaded facts in the complaint as true and draw reasonable inferences in [plaintiff's] favor").

More successfully, NAR argues that Sheth fails to establish causation—in other words, that NAR ignored the reference requests because of Sheth's protected conduct. Sheth cannot base causation on the temporal proximity between her protected activity and the reference requests. Sheth filed her charge of discrimination with the EEOC and IDHR on July 28, 2020, yet her complaint indicates that NAR's lack of response occurred in November 2022. [16] at 2 ¶ 1; *see also id.* ¶ 36. The more than two-year period between the filing of Sheth's charge and the ignored reference requests is too long to establish causation. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (rejecting that causation could be based on temporal proximity when "months separated the alleged protected activity and adverse action"); *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (47-day gap between protected activity and adverse action did not allow inference of causation).

Sheth suggests that causation is established because her EEOC claim was still under active investigation at the time the reference requests took place. [21] at 10. But Sheth's EEOC claim was pending for nearly four years, and she has offered no support for the proposition that an employer's conduct can be deemed causally connected to the initial filing, even years later, simply because an investigation

remained pending. To establish causation based on temporal proximity, courts instead focus on the date the charge was filed. *See Schultze v. White*, 127 F. App'x 212, 219 (7th Cir. 2005) (two-year gap between filing of charge and termination not enough to establish causation, even though complaints were pending at the time of termination).

In the absence of a purely temporal connection, Sheth must plead some facts suggesting that NAR had a retaliatory motive when it failed to respond to the reference requests. *See Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018). In an attempt to meet this burden, Sheth argues that causation is "implicit in [her] claim" and generally points to "the timeline surrounding" the filing of her charge of discrimination with the EEOC. [21] at 9. But this argument is too vague and underdeveloped, and it is not this Court's role to connect dots for Sheth. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995). And although Sheth does point more specifically to "the harassing texts" she received, [21] at 10, even those texts were sent nearly two years before NAR's alleged lack of response to reference requests. They therefore do not permit a reasonable inference that the lack of response was retaliatory as opposed to a mere oversight. Lastly, another specific allegation that Sheth cites is "NAR's failure to provide neutral references during this time period," *id.* at 9–10, but the allegedly retaliatory act itself cannot also serve as a foundation for causation.

Thus, as to the reference requests, Sheth has not alleged causation sufficient to state a Title VII claim for retaliation.

### 2. Text Messages

As for the harassing text messages, NAR is incorrect to assert that the texts are not adverse actions because they did not influence Sheth's future employment prospects. [18] at 6–7. Title VII's retaliation provision is not limited to an employer's actions that affect terms, conditions or status of employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). In the retaliation context, a materially adverse action "means any conduct that might dissuade a reasonable employee from lodging a discrimination charge." *Metzger*, 519 F.3d at 683. Applying that standard here, a reasonable employee who receives messages calling her a "rat" and telling her to "shut up" and "kill [her]self" would certainly be dissuaded from pursuing claims against her former employer. [16] ¶ 40. NAR does not attempt to argue otherwise.

Still, Sheth's allegations related to the harassing text messages fall short for a different reason: Sheth fails to plead the facts necessary to establish an agency relationship. Sheth alleges that NAR, "through its agents, sent [her] a series of harassing text messages," *id.*, yet Sheth does not specify who sent the text messages or how NAR exercised control over the senders to establish an agency relationship. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (test for agency in Illinois is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal"). To impute liability to NAR for the

actions of another, "[i]t is insufficient to merely plead the legal conclusion of agency." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498 (1996); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Without supporting facts (namely, who sent the texts and what their relationship with NAR was at that time), Sheth's conclusory allegation that the texts were sent through NAR's agents is not enough.

In addition to Title VII, Sheth also brings a retaliation claim under the IHRA. [16] ¶¶ 53–63. "Illinois courts apply the federal Title VII framework to IHRA claims." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). Because Sheth has not stated a Title VII retaliation claim, her IHRA retaliation claim likewise fails.[3]

Counts I and II are dismissed without prejudice.

## B. Section 1981 (Count III)

Sheth also brings a claim pursuant to 42 U.S.C. § 1981, which "protects the right of citizens regardless of race in the context of employment to have the same right to enforce and make contracts." *Singmuongthong v. Bowen*, 77 F.4th 503, 507

---

[3] Because Sheth's IHRA claim fails on the merits, the Court does not address NAR's alternative argument that the claim is time-barred, even assuming it could address this argument at this stage. The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). An exception applies where "the allegations of the complaint [ ] set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Here, the timeliness of Sheth's IHRA claim depends on whether the limitations period should be tolled pursuant to 775 ILCS 5/7A-102(A-1)(5), which in turn depends on whether "the EEOC [was] the governmental agency designated to investigate the charge first." 775 ILCS 5/7A-102(A-1)(1). Nothing on the face of Sheth's complaint indicates that was the case.

(7th Cir. 2023). "The legal analysis for discrimination claims under Title VII and § 1981 is identical." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019) (citing *Ferrill v. Oak Creek–Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017)).

First, to the extent Sheth brings a hostile work environment claim under § 1981, such a claim cannot proceed. A hostile work environment claim necessarily stems from conduct that occurred during an employee's tenure at a company. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) (a hostile work environment claim requires that the "*work environment* must have been ... offensive") (emphasis added). Here, Sheth admits that she released any claims based on NAR's actions during her employment when she signed the Settlement Agreement. [21] at 6. The Court is not persuaded by Sheth's argument that she is still subject to a hostile work environment because she relies on NAR to provide employment references. *Id.* at 14. Because Sheth no longer works at NAR and released any claims arising during her employment, she has no claim based on the work environment she allegedly experienced there.

Sheth's § 1981 claim for discrimination also falls short.[4] "In order to succeed on a § 1981 claim, as opposed to a claim under Title VII, a plaintiff has the burden of showing that race was a but-for cause of the injury." *Singmuongthong*, 77 F.4th at

---

[4] Although Count III is labeled as a § 1981 discrimination claim, [16] at 13, Sheth's allegations in that section of the amended complaint also refer to actions NAR took in retaliation for Sheth's protected activities, *id.* ¶¶ 70–71, 73. To the extent Sheth brings a § 1981 for retaliation, that claim falls short for the same reasons discussed in the context of Sheth's Title VII retaliation claim.

507 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020)). Here, Sheth does not plead that race was the but-for cause of her injury. Instead, she pleads that NAR "subjected [her] to adverse employment actions and a hostile work environment based on her sex, race, color, and perceived national origin." [16] ¶ 67. *See Piccioli v. Plumbers Welfare Fund Loc. 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) ("Racial discrimination must be the determining factor."); *see also Postell v. Fallsburg Libr.*, No. 20-CV-03991 (NSR), 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022) (district court dismissed § 1981 claim where plaintiff alleged discrimination because of his race or gender, "as it is well settled that 42 U.S.C. § 1981 provides no claim for gender").

To the extent she bases her § 1981 claim on the harassing text messages (and to be clear, it's not apparent from the complaint that she does), Sheth's § 1981 discrimination claim falls short for a second reason. In contrast to a retaliation claim, an adverse employment action for a discrimination claim must "materially alter the terms and conditions of employment." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)); *see also Burlington*, 548 U.S. at 59–61 (noting differences between Title VII's substantive discrimination provision and retaliation provision). Sheth's complaint

does not indicate how these text messages relate to her employment such that they could constitute an adverse action under § 1981.[5]

Count III is dismissed without prejudice.

## C. Breach of Contract (Count IV)

Sheth next brings a claim for breach of contract based on NAR's alleged failure to provide a neutral reference request. "To state a claim for breach of contract under Illinois law, a party must allege '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages.'" *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)).

NAR again argues that Sheth has not adequately alleged a breach because "she outright fails to allege that any prospective employer ever contacted the TDD." [18] at 12. The terms of the contract between NAR and Sheth required that, so long as

---

[5] The Seventh Circuit recognizes three categories of materially adverse employment actions in the discrimination context:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Dass*, 675 F.3d at 1069 (quoting *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)).

Sheth directed all reference requests to NAR's TDD, NAR would respond to requests by providing Sheth's dates of employment and position titles. [18-1] at 2. For the reasons discussed in the context of Sheth's Title VII retaliation claim, it is enough that Sheth pleads she "directed all reference requests to Defendant's Talent Development Department, as per the terms of the Agreement," [16] ¶ 77, and that she "received communication indicating that requests to obtain references from Employer were met with a complete lack of response," *id.* ¶ 78. Such allegations state a claim for breach. *See Twombly*, 550 U.S. at 570 (courts do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").

NAR argues for the first time in its reply that Sheth cannot plead damages because the email from the Shield verification specialist gave her the opportunity to verify her employment details herself. [22] at 4, 9. Even accepting that Sheth was not injured by NAR's lack of response in that instance, the complaint contemplates that NAR failed to respond on more than one occasion. *See, e.g.*, [16] ¶ 78 ("Plaintiff received communication indicating that *requests* to obtain references from Employer were met with a complete lack of response.") (emphasis added). The Court will not speculate as to whether, in these other instances, Sheth was also provided the opportunity to verify the employment details herself. At this early stage, Sheth's allegation that NAR's conduct "caused [her] to lose employment opportunities and delayed career progression" suffices. *Id.* ¶ 80.

NAR's motion to dismiss as to Count IV is denied.

15

**D. Tortious Interference (Count V)**

Sheth's final claim is for tortious interference with prospective economic advantage. "To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511 (1991)).

Sheth has not pled facts sufficient to show she had a reasonable expectancy of a future business relationship. Her amended complaint notes one instance in which she "made it to the final round of interviews for a real estate start-up company" and otherwise pleads that she was unable "to obtain alternative employment despite her excellent credentials and more than 100 applications for positions for which she was qualified." [16] ¶¶ 35–37. However, the "hope of receiving a job offer is not a sufficient expectancy." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). In *Anderson*, for example, plaintiff alleged in her complaint that "she was the 'leading candidate' for the YMCA position, that she had been assured that her interviews had gone well and that she was being 'seriously considered' for the job, and that those who had interviewed her were going to recommend that she be hired." *Id.* at 408. Nonetheless, the Court found that "while the plaintiff's progression past the initial series of

interviews speaks well of her candidacy, it does not by itself demonstrate a reasonable expectancy of employment." *Id.*

"Federal courts applying Illinois law have repeatedly applied *Anderson* to reject claims for intentional interference with prospective business advantage where the plaintiff does not have an actual job offer but instead has merely the hope of receiving a job offer." *Aslam v. Bd. of Educ. of City of Chi.*, No. 06-4920, 2008 WL 3978562, at *8 (N.D. Ill. Aug. 25, 2008) (quoting *Myers v. Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 WL 2403126, at *3 (N.D. Ill. Oct. 26, 2004)). Consistent with these cases, that Sheth was in the final round of interviews does not render her expectation of ultimately receiving the position reasonable. *See Pomerantz v. Taylor-Nations*, 2013 IL App (1st) 122518-U, ¶ 33 (applying *Anderson* to hold that plaintiff who had "reached the final round of interviews several times" did not have a sufficient expectancy of employment). Unlike other cases that have survived a motion to dismiss, Sheth does not allege she was told she would be hired upon checking her references or that she was first in line to receive the job. *See O'Driscoll v. Argosy Univ.*, No. 12 C 10164, 2014 WL 714023, at *4 (N.D. Ill. Feb. 25, 2014) (plaintiff had more than a hope of receiving a job offer where interviewer "stated that he would hire her upon checking her references"); *McGreal v. Vill. of Orland Park*, No. 12 C 5135, 2013 WL 3984477, at *10 (N.D. Ill. Aug. 2, 2013) (plaintiff adequately alleged reasonable business expectancy where "he was ranked first on the Village of Mokena's eligibility list for police officers").

Sheth argues that because "reference checks are traditionally the penultimate step prior to the extension of an offer," her circumstances were "significantly different from merely hoping for a job." [21] at 15. But it is overly speculative to assume that Sheth would get the job merely because she had reached the point of obtaining references. Employers can and do seek references for more than one candidate and sometimes make hiring decisions based on information learned from the references themselves. Based on the few facts alleged in the complaint, Sheth's chance of receiving a job offer was "far from a sure thing." *3DGS, LLC v. Chai Tr. Co., LLC*, No. 19 CV 7524, 2020 WL 7353406, at *9 (N.D. Ill. Dec. 15, 2020).

Because Sheth has not alleged she had a reasonable business expectancy in a job offer, the Court does not address NAR's arguments that she failed to plead NAR lacked knowledge of the business expectancy and that it purposefully interfered with any such relationship. Count V is dismissed without prejudice.

## CONCLUSION

For the reasons discussed, NAR's motion to dismiss [17] is granted in part and denied in part. Counts I, II, and III, and V are dismissed without prejudice. Count IV may proceed beyond the pleadings.

The Court grants Sheth leave to file a second amended complaint on or before 5/13/25 if she can cure the deficiencies with the dismissed claims while still complying with her Rule 11 obligations. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). If Sheth elects not to file a

second amended complaint by 5/13/25, the dismissal of those claims will convert to a dismissal with prejudice.

The parties are directed to appear for a status hearing on 5/27/25 at 9:30 a.m. By 5/20/25, the parties are directed to submit a joint status report with proposed next steps in this matter, including a joint proposed discovery plan and conveying their interest in a settlement conference.

_____
Georgia N. Alexakis
United States District Judge

Date: 4/22/25