IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSHANI SHETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-05061 |
| v. | ) | |
| | ) | Judge Georgia N. Alexakis |
| THE NATIONAL ASSOCIATION OF REALTORS, | ) | Magistrate Judge M. David Weisman |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NATIONAL ASSOCIATION OF REALTORS®' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Dated: July 8, 2025

Anneliese Wermuth (#06270970)
COZEN O'CONNOR
123 N. Wacker Drive, Ste. 1800
Chicago, Illinois 60606
(312) 474-7900
(312) 878-2023 (Fax)
awermuth@cozen.com

Steven Millman (*Admitted Pro Hac Vice*)
COZEN O'CONNOR
1650 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 665-2000
(215) 665-2013 (Fax)
smillman@cozen.com
*Attorneys for Defendant,*
*National Association of REALTORS®*

LEGAL\78622370\4

I.  **INTRODUCTION**

In yet another effort to rehabilitate her claims, Plaintiff Roshani Sheth has filed a Second Amended Complaint against Defendant National Association of REALTORS® ("NAR") that asks the Court to entertain implausible allegations and indulge in speculation. For the third time, Plaintiff relies on arguments that are either waived or based on conjecture, and it has become entirely transparent that Plaintiff is unable to plead the facts necessary to substantiate all but one of her claims.

Plaintiff's retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I) and under the Illinois Human Rights Act ("IHRA") (Count II) should be dismissed for the same reasons the Court dismissed them previously – specifically, because (i) Plaintiff fails to allege the requisite causal link between her alleged protected activity and the purported adverse employment action, and (ii) with regard to the text messages, Plaintiff fails to sufficiently allege an agency relationship to establish that NAR committed an adverse employment action. Count II is alternatively deficient because Plaintiff failed to timely pursue her IHRA claim. Lastly, Plaintiff's discrimination claim brought under 42 U.S.C. § 1981 (Count III) should be dismissed for the same reason the Court dismissed it previously. That is, Plaintiff again fails to allege that her race was the "but for" cause of any purported adverse employment action.

For these reasons, and those more fully stated below, this Court should dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint, with prejudice.

II.  **FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT[1]**

NAR is a trade association for professionals in the real estate industry. (*See* Dkt. 30, Second

---

[1] For purposes of this Motion only, NAR accepts as true the allegations in the Second Amended Complaint. NAR reserves the right to deny and/or contest any of the allegations set forth in the Second Amended Complaint should this Motion be denied.

Am. Compl., at Parties, Jurisdiction, and Venue, ¶ 1.)[2] Plaintiff was employed by NAR from May 17, 2014, until her employment was terminated on October 2, 2019. (*Id.* at ¶ 1.)

The Second Amended Complaint, like the Amended Complaint, offers a litany of allegations against NAR that purportedly occurred during Plaintiff's employment. Plaintiff and NAR, however, executed a settlement agreement and general release on December 19, 2019 ("Settlement Agreement"), after her employment was terminated, in which Plaintiff "release[d] [NAR] from any and all claims arising out of [her] employment with [NAR]" as of the execution date, including, but not limited to claims brought under Title VII, the IHRA, and Section 1981. (Second Am. Compl. at ¶ 34; Ex. A, Settlement Agreement at § 4(a).) This Court acknowledged in its April 22, 2025 Memorandum Opinion and Order that the Settlement Agreement operated to "release and discharge all then-existing claims against NAR arising out of [Plaintiff's] employment." (Dkt. 27, 4-22-25 Mem. Op. and Order.) The Settlement Agreement also stated, *inter alia*, that NAR would provide a neutral employment reference to future employers upon receipt of a request directed to NAR's Talent Development Department ("TDD"). (*Id.* at ¶ 35; Ex. A at § 2(b).)

On June 28, 2020, after her employment was terminated and after she executed the Settlement Agreement with NAR, Plaintiff cross-filed a Charge of Discrimination with the IDHR and the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, at Exhaustion of Administrative Remedies ¶ 1.) The Second Amended Complaint states that the IDHR was the government agency designated to investigate the Charge first, before the EEOC. To this end,

---

[2] NAR notes that the paragraph numbering of the Second Amended Complaint is incorrect. The paragraph numbering begins in the "Parties, Jurisdiction, and Venue" section, restarts in the "Exhaustion of Administrative Remedies" section, and restarts again in the "Facts" section. Furthermore, the "Background" section does not contain any paragraph numbering. To avoid confusion, citations to paragraphs within the Parties, Jurisdiction and Venue section or the Exhaustion of Administrative Remedies section will include the section title, along with the paragraph number, and citations to the Facts section will include only the paragraph number.

2

Plaintiff concedes in the Second Amended Complaint that, on September 2, 2022, the IDHR issued a letter informing her that the time limit to complete **its investigation** had expired and that **the Charge would be forwarded to the EEOC for investigation** ("IDHR Closing Letter"). (*Id.*, at Exhaustion of Administrative Remedies ¶ 2; Ex. B, IDHR Closing Letter (emphasis added).) The IDHR Closing Letter explicitly informed Plaintiff: "If you wish to pursue your complaint, *you must* . . . **commence a civil action in the appropriate state circuit court** within the 90-day window period after the expiration date. We have calculated the window period for filing your complaint or civil action to be from August 30, 2022, through November 27, 2022." (Ex. B.) On March 20, 2024, over eighteen months after the IDHR concluded its investigation and forwarded the Charge to the EEOC for investigation, the EEOC issued a Determination and Notice of Rights, informing Plaintiff that it "will not proceed further with its investigation" and informing her of her right to sue. (Second Am. Compl., at Exhaustion of Administrative Remedies ¶ 3.)

Outside of the allegations in the Second Amended Complaint that were waived by the Settlement Agreement, Plaintiff alleges that, since her October 2, 2019 termination, she has been unable to secure alternative employment despite submitting a number of applications for positions for which she was qualified. (*Id.* at ¶ 38.) Plaintiff further alleges that, on November 18, 2022 – a date more than three years after her employment with NAR ended and within the ninety-day window for her to file her IDHR claim – one "verification specialist" from a company called Shield Screening informed Plaintiff that "despite making 'several attempts' to contact Defendant, they could not verify the employment details." (*Id.* at ¶ 40.)

Plaintiff continues to allege that, between February 17 and 19, 2021, she received a series of harassing text messages from "agents" of NAR. (*Id.* at ¶ 44.) As she did in her earlier Amended Complaint, Plaintiff suggests that these text messages line up with the IDHR's request for documents *from Plaintiff*. (*Id.* at ¶¶ 42-45.) Given that the Court, in its April 22, 2025

3

Memorandum Opinion and Order, held that Plaintiff "fails to plead the facts necessary to establish an agency relationship" between the alleged "agents" and NAR, in an attempt to save her claims, Plaintiff enlisted a private investigator to try to verify the author of the texts. (*Id.* at ¶ 46.) Plaintiff concedes, however, that the private investigator "found that the phone number belonged to an **innocent person** either (i) "sharing a name **similar** to that" of a **non-NAR employee's former wife**, or (ii) "sharing a name **similar** to . . . the **first** name of an NAR employee." (*Id.* at ¶ 46.)

Plaintiff's Second Amended Complaint also attempts to rehabilitate her Section 1981 claim. To this end, Plaintiff continues to assert her prior allegations of a hostile work environment arising from her employment with NAR, an argument the Court previously rejected. (*Id.* at ¶¶ 74, 75.) Moreover, Plaintiff again stakes her Section 1981 claim on various theories based on "sex, race, color, and perceived national origin." (*Id.* at ¶¶ 74, 76.)

**III.     STANDARD OF REVIEW**

Dismissal is proper pursuant to Rule 12(b)(6) where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Conclusory allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55). Thus, to survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

4

IV.     **ARGUMENT**

    A.     **Counts I and II Should Be Dismissed Because Plaintiff Fails to Sufficiently Plead a Claim of Retaliation.**

Plaintiff alleges retaliation under both federal and state law (Counts I and II, respectively). Title VII and the IHRA prohibit employers from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by" Title VII, or "made a charge." 42 U.S.C. § 2000e-3(a); *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (noting federal district courts apply Title VII framework to IHRA claims).

Pleading a claim of retaliation under Title VII requires a plaintiff to show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008) (quoting *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007)). To satisfy the causation requirement for a Title VII retaliation claim, a plaintiff must show that her protected activity was the but-for cause of the employer's adverse action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). A plaintiff's claim is considered implausible if there is an inexplicable delay between the protected activity and the adverse action. *Carmody v. Bd. of Trs. of the Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014). Just as this Court previously determined, Plaintiff again fails to adequately plead the causation element of her retaliation claims. Accordingly, Counts I and II should be dismissed.

        i.     **Plaintiff Has Not Alleged Causation Sufficient to State a Retaliation Claim with Regard to the Text Messages Because She Fails to Plead the Facts Necessary to Establish an Agency Relationship**

The Court's April 22, 2025 Memorandum Opinion and Order ruled that Plaintiff's "allegations related to the harassing text messages fall short" of plausibly alleging causation because Plaintiff "fails to plead the facts necessary to establish an agency relationship." (Dkt. 27,

5

4-22-25 Mem. Op. and Order, at 10-11.) Despite Plaintiff's attempt to replead (for the third time), Plaintiff's allegations *still* do not rise above mere speculation because they fail to rationally allege that NAR was involved in the purported adverse employment action of sending the text messages. *See Twombly*, 550 U.S. at 555 (holding that, to survive a motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief *above the speculative level*") (emphasis added).

Importantly, federal law makes it unlawful for an "*employer* to discriminate against any of his employees . . . ." 42 U.S.C. § 2000e-3 (emphasis added). Therefore, to impute the liability of another onto the employer, the plaintiff must plead a plausible agency relationship. This requires showing that "the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (interpreting Illinois law). Chief among these considerations is whether the principal retains the right to control the agent. *See id.; see also Lawlor v. North Am. Corp. of Ill.*, 2012 IL 112530, ¶ 44 (Ill. 2012).

Here, Plaintiff again fails to plausibly plead an agency relationship between the author of the purported text messages and NAR. Plaintiff alleges that NAR, through its agents, subjected Plaintiff to an adverse employment action by sending a series of "anonymous harassing text messages" sometime after Plaintiff requested from the IDHR an extension to provide additional information to the IDHR. (Second Am. Compl. at ¶ 56.) Plaintiff's new allegations state that "Plaintiff engaged the services of a private investigator in order to attempt to verify the author of the text messages," and that the "private investigator found that the phone number belonged to an innocent person who shared a name similar to that of Matthew Embrescia's former wife as well as the first name of an NAR employee . . . ." (*Id.* at ¶ 46.) As discussed below, Plaintiff's new

6

allegations concerning the private investigator do not save her claims and, to the contrary, end up confirming that Plaintiff is unable to plead the requisite agency relationship.

First and foremost, Plaintiff does not plausibly allege that any NAR agent was involved in authoring or sending the messages in question, or involved in engaging the services of another to do so. In fact, by Plaintiff's own admission, the text messages were sent by an "**innocent**" third-party individual. (*Id.* (emphasis added)). Traditionally, the analysis stops there, and Plaintiff's own choice of words is enough to establish NAR's lack of involvement. However, in a desperate attempt to connect this innocent person to NAR, Plaintiff goes further to state that the individual "shared a name similar to" two people: (1) the former wife of Matthew Embrescia; and (2) the first name of an NAR employee. (*Id.*)

Plaintiff's first obvious issue is that Matthew Embrescia (as Plaintiff has conceded) was not employed by NAR. (*See id.* at ¶¶ 7, 46.) As Plaintiff admits, Mr. Embrescia is the President of a third-party company, Second Generation, Ltd. (*Id.* at ¶ 7.)[3] But Plaintiff's conjecture does not stop there. Instead, she digs her hole deeper by alleging that the innocent individual only shared a name *similar* to that of Mr. Embrescia's former wife—an individual Plaintiff does not allege has any connection to NAR. (*Id.* at ¶ 46.) Plaintiff, in other words, claims that the innocent individual merely bears a name *similar* to a wholly unrelated person who was at one time in the past married to someone who is not an employee of NAR.

Plaintiff's speculation continues by alleging (evidently in the alternative) that the innocent person's name was also *similar* to the *first* name of a NAR employee. (*Id.*) In dissecting this allegation, it is clear that Plaintiff fails to meet the requirements of *Twombly*. If the first names were the same, Plaintiff would have said so instead of saying they were similar. Likewise, if the

---

[3] Second Generation, Ltd.'s website states that it is "a family-owned investment and management company."

7

last names were the same (or even similar), Plaintiff would have alleged as such. Alleging that the first names are merely "similar" is an admission that the names are *different*. Simply put, Plaintiff's allegation that an innocent third-party shares a name similar to two other individuals fails to show that NAR exercised any control over that person. At bottom, Plaintiff's new allegations concerning the private investigator's findings effectively prove that there is no link between the author of the texts and NAR.[4]

### ii. Plaintiff Fails to Adequately Allege a Causal Link Between the Reference Requests and Any Protected Activity

The Court's April 22, 2025 Memorandum Opinion and Order ruled that Plaintiff "has not alleged causation sufficient to state a [ ] claim for retaliation" "as to the reference requests." (Dkt. 27, 4-22-25 Mem. Op. and Order, at 8-9.) Plaintiff's Second Amended Complaint again misses the mark of plausibly alleging a causal link between Plaintiff's asserted protected activity and NAR's alleged refusal to provide an employment reference. As to this causal connection requirement, a plaintiff asserting Title VII or IHRA retaliation must plead that the protected activity was the "but-for" cause of the alleged adverse employment action by the employer. *See* Univ. of Texas Sw. Med. Ctr., 570 U.S. at 362.

As this Court highlighted in its April 22, 2025 Memorandum Opinion and Order, "[t]o establish causation based on temporal proximity, courts [ ] focus on the date the charge was filed." (Dkt. 27, 4-22-25 Mem. Op. and Order, at 9 (citing *Schultze v. White*, 127 F. App'x 212, 219 (7th Cir. 2005)). If a plaintiff simply alleges she engaged in protected activity, and then, years later, the employer took an adverse action against her, the claim may not proceed. *See, e.g., Carmody v. Bd. of Trustees of Univ. of IL.*, 747 F.3d 470, 480 (7th Cir. 2014) (affirming dismissal of retaliation

---

[4] The only allegation of control is Plaintiff's statement that she "believes" that former and/or current NAR personnel were behind the text messages. However, such conclusory statements are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55). Plaintiff's speculations therefore fail to establish an agency relationship between the "innocent person" and NAR, thereby also failing to attribute the text messages to NAR.

claim where three years separated protected activity and the alleged retaliation); *Lugo v. IBEW Local #134*, 175 F. Supp. 3d 1026, 1038 (N.D. Ill. 2016) (granting motion to dismiss retaliation claim where one-year gap existed between plaintiff's protected activity and the alleged retaliation).

Here, Plaintiff simply alleges that, in June 2020, she dual-filed a charge with the IDHR and the EEOC. (Second Am. Compl. at Exhaustion of Administrative Remedies, ¶ 1.) Plaintiff then alleges that the purported adverse employment action of failing to provide a reference occurred over two years later, in November 2022. (*Id.* at ¶ 55.) In focusing on the date Plaintiff filed her charge, more than two years passed between Plaintiff's protected activity and the purported adverse action. This two-year gap in time prevents Plaintiff from adequately alleging the requisite causal link.

Plaintiff's sole attempt to rehabilitate her retaliation claims (predicated on NAR's alleged failure to provide a neutral reference) relies on her new allegation that NAR retaliated against her by refusing to provide a neutral reference for her on November 18, 2022, which fell within her 90-day window for initiating a civil action after the IDHR closed its investigation. (*Id.* at ¶ 40.) However, Plaintiff's new allegation references no new protected conduct on behalf of Plaintiff. It is axiomatic that to successfully raise a retaliation claim, the plaintiff must show that *she* engaged in a protected activity. *See Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024) (citing *Miller v. Polaris Laboratories, LLC*, 797 F.3d 486, 492 (7th Cir. 2015)); 42 U.S.C. § 2000e-3(a). Here, Plaintiff makes no showing that she engaged in any statutorily protected activity beyond filing the charge over two years prior. Instead, Plaintiff seems to rely on the IDHR's issuance of a right-to-sue letter, which does not constitute a protected activity on behalf of Plaintiff. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (rejecting "utterly implausible suggestion that the EEOC's issuance of a right-to-sue letter – an action in which the employee takes no part – is a protected activity of the employee"); *Clemmer v. Off. of Chief Judge of Cir. Ct. of Cook*

9

*Cnty. and State of Ill*, No. 06 C 3361, 2008 WL 5100859, at *10 (N.D. Ill. Dec. 2, 2008) ("Protected activity . . . does not include the EEOC's issuance or receipt of a right-to-sue letter."). As such, the only protected activity Plaintiff can plausibly point to is her filing of the Charge in June 2020, which this Court has already ruled is not causally connected to any adverse employment action.

Because there is no causal connection between any purported protected activity and any alleged adverse employment action, Plaintiff has failed to plausibly allege the required elements of a claim for retaliation under Title VII and the IHRA. Accordingly, Counts I and II of the Second Amended Complaint should be dismissed.

**B.     Alternatively, Count II Should Be Dismissed Because It Is Untimely.**

It is apparent from the face of the Second Amended Complaint that Plaintiff's IHRA claim is time-barred and must be dismissed.[5] Although plaintiffs are not typically required to plead around affirmative defenses, an exception exists where "the allegations of the complaint [ ] set forth everything necessary to satisfy the affirmative defense." *Ferguson v. Mount Sinai Med. Ctr.*, No. 23-3392, 2024 WL 3272123, at *2 (7th Cir. July 2, 2024) (internal quotations omitted) (quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)).

Whether Plaintiff's IHRA claim was timely depends on whether the limitations period should be tolled pursuant to 775 ILCS 5/7A-102(A-1)(5). Such tolling only occurs if "the EEOC [was] the governmental agency designated to investigate the charge first." 775 ILCS 5/7A-102(A-1)(1). Plaintiff's Second Amended Complaint answers this question on its face in the negative.

The allegations in the Second Amended Complaint make it clear that Plaintiff's window to bring her IHRA claim elapsed in 2022. Plaintiff pleads that, "[o]n February 11, 2021, IDHR took up the Plaintiff's case and requested documents to be provided to them by February 16, 2021."

---

[5] Having dismissed Plaintiff's IHRA claim on the merits, the Court did not squarely address the issue of whether Plaintiff's IHRA claim is time-barred. (Dkt. 27, 4-22-25 Mem. Op. and Order, at 11, fn3 ("Because Sheth's IHRA claim fails on the merits, the Court does not address NAR's alternative argument that the claim is time-barred . . . .").

10

(Second Am. Compl. at ¶ 42.) Plaintiff proceeds to plead that "[o]n September 2, 2022, the IDHR issued a letter informing the Plaintiff that the time limit for the completion of **its investigation** had expired, and that it would be **forwarded to the EEOC for investigation**." (*Id.* at Exhaustion of Administrative Remedies, at ¶ 2 (emphasis added).) It is clear from these two paragraphs that the IDHR investigated Plaintiff's claims between February 11, 2021 and September 2, 2022. Plaintiff then alleges that, on March 20, 2024 (a date over eighteen months after the IDHR closed *its investigation* and *forwarded* the charge to the *EEOC for investigation*), "the EEOC issued a Determination and Notice of Rights informing the Plaintiff of her right to sue." (*Id.* at Exhaustion of Administrative Remedies, ¶ 3.) The EEOC's Determination and Notice of Rights explicitly states that "The EEOC will not proceed further with its investigation," making it clear that the EEOC's investigation of the matter spanned from on or about September 3, 2022 (when the IDHR forwarded the charge to the EEOC for investigation) to March 20, 2024 (when the EEOC issued its Determination and Notice of Rights). (Ex. C, EEOC Determination and Notice of Rights).

Further evidencing the fact that Plaintiff's IHRA claim is time-barred is the fact that the IDHR's September 2, 2022 letter expressly informed Plaintiff of the deadline by which she must file an IHRA claim:

> If you wish to pursue your complaint, *you must either* **file a complaint with the Human Rights Commission OR commence a civil action in the appropriate state circuit court** within the 90-day window period after the expiration date. We have calculated the window period for filing your complaint or civil action to be from **August 30, 2022, through November 27, 2022**. If you file a complaint outside the 90-day window period, your complaint may be dismissed.

(Ex. B, IDHR Closing Letter) (emphasis in original). The statutory timeframes in the IDHR Closing Letter alone make clear that Plaintiff failed to bring this action until nearly *two years* after her 90-day window had closed.

11

The Second Amended Complaint squarely establishes the essential fact that the IDHR was the first agency responsible for investigating Plaintiff's charge, and that the IDHR only forwarded the charge to the EEOC for investigation *after* the IDHR's investigation had ended. Accordingly, Section 7A-102(A-1)(5) does not toll the limitations period, and no amount of repleading will enable Plaintiff to bring this claim in a timely manner. For this alternative reason, Count II should be dismissed, with prejudice.

    **C.    Count III Should Be Dismissed Because Plaintiff's Allegations Are Waived By Operation of the Settlement Agreement and Plaintiff Fails to Allege that Race Was the "But For" Cause of Any Purported Adverse Employment Action.[6]**

To allege a plausible § 1981 discrimination claim, Plaintiff must allege that she is a member of a class protected by the statute and that she had been subjected to an adverse employment action because of her protected status. *See Shirley v. Staffing Network Holdings, LLC*, No. 16 C 6279, 2016 WL 6599951, at *3 (N.D. Ill. Nov. 8, 2016) (citations omitted). Plaintiff thus must plead that **but for** her race (or other singular, characteristic protected under § 1981), she would not have suffered the loss of a legally protected right. *See Mir v. State Farm Mut. Auto. Ins. Co.*, 847 Fed. Appx. 347 (7th Cir. Feb. 24, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020)) (emphasis added). Indeed, to properly plead her § 1981 claim, "[r]acial discrimination must be the determining factor." *Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020). "[A]

---

[6] Count III of Plaintiff's Second Amended Complaint states it is a claim of discrimination in violation of § 1981, but also alleges NAR retaliated against Plaintiff in violation of § 1981. It is unclear from the face of the Second Amended Complaint which type of § 1981 claim Plaintiff is attempting to assert against Defendant. Nevertheless, "[t]o state a retaliation claim under § 1981 based on events occurring in the workplace, an employee must show that she suffered a materially adverse action because she engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016) (citations omitted). To the extent Plaintiff is attempting to assert a claim of retaliation under § 1981, as discussed above, because Plaintiff has not alleged any causal connection between her alleged protected activity and any purported adverse employment activity, that claim should also be dismissed.

plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision." *Id.*

As this Court has already ruled, "to the extent Sheth brings a hostile work environment claim under § 1981, such a claim cannot proceed" "[b]ecause Sheth no longer works at NAR and released any claims arising during her employment." (Dkt. 27, Mem. Op. and Order, at 12.) Plaintiff, however, ignores the Court's ruling and maintains the same allegations concerning the allegedly hostile work environment. Nonetheless, to the extent Plaintiff's § 1981 claim is based on a hostile work environment, NAR relies on the same arguments it made in its previous Motion to Dismiss, along with the Court's corresponding Memorandum Opinion and Order.[7]

As the Court ruled in its April 22, 2025 Memorandum Opinion and Order, Plaintiff's § 1981 claim for discrimination also falls short," "because Sheth does not plead that race was the but-for cause of her injury." (Dkt. 27, 4-22-25 Mem. Op. and Order, at 13.) The Court reasoned that, "Instead, she pleads that NAR 'subjected [her] to adverse employment actions and a hostile work environment based on her sex, race, color, and perceived national origin.' [16] ¶ 67." (*Id.*)

Despite repleading, the Second Amended Complaint *still* includes this same allegation, which this Court has already found fatal to Plaintiff's § 1981 claim. Indeed, Plaintiff continues to plead in Count III that NAR "subjected [her] to adverse employment actions and a hostile work environment based on her sex, race, color, **and** perceived national origin." (Second Am. Compl. at ¶ 74 (emphasis added).) Thus, Plaintiff fails to properly allege that race (or any other singular, protected characteristic) was the "but for" cause of any purported adverse employment action she suffered, and, instead again bundles her allegations by claiming "Defendant discriminated against

---

[7] Insofar as Plaintiff attempts to assert NAR's "history of discrimination" (Second Am. Compl. at ¶ 77 (citation modified)) or "racial animus" based on past conduct (*id.* at ¶ 81), Plaintiff again fails to recount that such allegations are waived by the Settlement Agreement.

13

Plaintiff because of her sex, race, **and** perceived national origin, which violated 42 USCS § 1981." (*Id*. at ¶ 76 (emphasis added).)

Accordingly, these allegations, at best, suggest that race was but **one of several** factors in the purported adverse employment action, but fall woefully short of the "but for" pleading standard set forth in *Comcast*. *See, e.g., Arora v. Nav Consulting Inc.*, No. 21-cv-4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) (*citing Postell v. Fallsburg Libr.*, No. 20-CV-03991 (NSR), 2022 WL 1092857, at *9 (S.D.N.Y. Apr. 8, 2022) (holding that plaintiff's "bundled" allegations of "race, gender, or age" precluded but-for finding under § 1981), *and Rodriguez v. CP Dev., Inc.*, No. CV 20-1672, 2021 WL 3037712, at *5 (W.D. Pa. July 19, 2021) (dismissing § 1981 claim based on "mixed bag" of national origin and race discrimination allegations)); *James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508, at *12 (N.D. Ill. Sept. 29, 2021); *Piccioli*, 2020 WL 6063065, at *6. Setting aside that "sex" and "national origin" are not protected classes under § 1981, Plaintiff's pleading fails in that she identifies a "mixed bag" of protected characteristics instead of alleging just one was the but for cause of any purported adverse employment action.

While Plaintiff added a new phrase to new Paragraph 81 of the Second Amended Complaint – Plaintiff added the following italicized text: "But for Defendant's egregious conduct, *motivated by a racial animus as evidenced by its past conduct towards her*, Plaintiff would have succeeded in securing subsequent employment much sooner" – this new language does not save Plaintiff's § 1981 claim for two reasons. (Second Am. Compl. at ¶ 81 (emphasis added).) First, this new language does not cure the fact that Plaintiff still pleads a "mixed bag" of sex, race, color, and perceived national origin discrimination allegations in Paragraphs 73, 74, 76, and 78 of Count III. One added reference to "racial animus" does not cancel these out. Second, Plaintiff's new allegation that NAR was "motivated by a racial animus" is insufficient to meet her pleading standard. The Seventh Circuit has held that, pleading that a defendant was motivated by racial

discrimination does not permit the inference of but-for causation. *See Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (contrasting race discrimination claims under Title VII that "simply require that race be a 'motivating factor,'" with § 1981 claims where "a plaintiff bears the burden of showing that race was a but-for cause of [her] injury"); *Mir*, 847 Fed. Appx. at 350 ("[W]hen bringing a § 1981 race-discrimination claim, a plaintiff must initially plead and ultimately prove that, *but for race*, he would not have suffered the loss of a legally protected right"); *see also James v. City of Evanston*, 2021 WL 4459508, at *10 (N.D. Il. Sept. 29, 2021) (explaining that "'but-for' causation standard [in § 1981 claims] is narrower than the 'motivating factor' causation standard applicable to claims brought under Title VII").

The Second Amended Complaint fails to state a claim of race discrimination (or any sort of discrimination) under § 1981, and, therefore, Count III should be dismissed, with prejudice.

## V. CONCLUSION

Plaintiff has now had three bites of the apple dating back to mid-June of 2024 to adequately plead allegations sufficient to survive a motion to dismiss, yet, Counts I, II, and III remain patently deficient. For the above reasons, Defendant NAR respectfully requests that this Court dismiss Counts I, II, and III of the Second Amended Complaint, with prejudice.

Dated: July 8, 2025

Respectfully Submitted:

By: */s/ Steven Millman*
Anneliese Wermuth (#06270970)
Steven Millman (*Admitted Pro Hac Vice*)
COZEN O'CONNOR
123 N. Wacker Drive, Ste. 1800
Chicago, Illinois 60606
(312) 474-7900
(312) 878-2023 (Fax)
awermuth@cozen.com
smillman@cozen.com
*Attorneys for Defendant National Association of REALTORS®*

**CERTIFICATE OF SERVICE**

I, Steven Millman, an attorney, hereby certify that on **July 8, 2025**, I caused a true and correct copy of **DEFENDANT NATIONAL ASSOCIATION OF REALTORS®' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS** to be electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

> Rupa Baskaran
> Wilt Toikka Kraft, LLP
> 1629 K. Street NW, Suite 300
> Washington, DC 20006

/s/ *Steven Millman*
Steven Millman